UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


JERRY L. JOHNS,

    Petitioner,

v.                                                3:01-cv-014
                                                   3:97-cr-143


UNITED STATES OF AMERICA,

    Respondent.


**MEMORANDUM OPINION**


This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the § 2255 motion will be **DENIED** and this action will be **DISMISSED**.


I. Standard of Review

This court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, a petitioner "must show a 'fundamental defect which inherently results in a complete

miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT COURTS, the court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.     Factual Background

Following a bench trial, petitioner was convicted of conspiracy to commit the offense of mailing a threatening communication and two counts of mailing a threatening communication. He was sentenced to concurrent terms of imprisonment of 50 months for each conviction. On direct appeal, petitioner unsuccessfully challenged the sufficiency of the evidence against him. *United States v. Johns*, No. 98-6673, 2000 WL 64948 (6th Cir. January 11, 2000).

The court of appeals summarized the evidence against petitioner as follows:

> In September of 1995, Assistant District Attorney William Jeff Blevins and the Honorable Lynn Brown, Criminal Court Judge for the First Judicial Circuit, Tennessee, each received threatening letters. Both letters were

2

typewritten and unsigned, but contained the return address of John Garrison, then an inmate at the Southeastern Tennessee State Regional Correctional Facility ("STSRCF"). The letter to Blevins, addressed to "Keith Blevins" (there is no "Keith Blevins" at that office or in Jeff Blevins' family) at the address of Jeff Blevins' office read:

> Blevins:
> You and your office have persecuted me long enough so you may not see the end of the year or so Dorcie assures me. With over 800 suspects you will never prove I did a thing as this letter holds no evidence.
> Good Fishing.

(J. A. 28). The letter to Judge Brown was similarly typed, although it did have Judge Brown's correct name on it, and was sent to his office.

> Judge Lynn Brown
>    It took a little time using the trial and error method but I have finally made the right connection. this (sic) is merely to inform you that you are taking the last looks around your world. Dorcie assures me that your days are numbered.
> Greg has made it plain that you committed to (sic) many errors and I will prevail in the appellate courts. That means I could be around watching when you take your last breath.
> To quote a well known T.V. star "Noboby (sic) saw me do it, you can't prove a thing." You now have over 800 suspects, good fishing.

(J. A. 30)(spacing original).

Blevins had received two anonymous, handwritten threatening letters in 1993; STSRCF inmate John Garrison had pled guilty to writing these letters following Blevins' prosecution of Garrison for an earlier crime. Judge Brown also had a connection to John Garrison: he had been designated as a special judge to re-sentence Garrison and had doubled his original sentence to sixteen years following an appeal.

Both Blevins and Judge Brown testified that they were concerned for their safety after receiving the letters. Blevins stated that he believed the name "Dorcie" in the letters referred to Dorcie Jenkins, a man Blevins had previously prosecuted who had committed a gory murder.

3

Blevins testified that although he first thought the letter could have been connected with Garrison, the differences from the original letters dissuaded him. Jerry Johns became a suspect because Blevins was aware that Johns had been interviewed during the investigation of the 1993 letters, and had at that time offered to provide information on Garrison in exchange for a transfer to another prison. Johns' offer was declined by prosecutors who felt he was trying to blackmail them.

United States Postal Inspector Russell Fallis, who had investigated the 1993 Garrison letters, was assigned to investigate the 1995 letters. Fallis interviewed Johns in November of 1995 at STSRCF. Johns told Fallis that although he had not previously seen the 1995 letters, they looked like they had been written on a Brothers typewriter kept in the prison library. Johns also told Fallis he would attempt to find out who had written the letters. Fallis took handwriting samples from Johns and left him his business card. Fallis testified that Johns was more of a suspect after the interview than before, due to his comment about the typewriter.

Fallis later received an anonymous letter in Johns' handwriting. The letter stated that there was an inmate serving a life sentence for murder who was a "treasure trove" of information about the letters, but who didn't want to come forward. After re-interviewing Johns, Fallis received a telephone call from an STSRCF employee who told Fallis that he had received a Brothers typewriter print wheel from Jerry Johns which had come from a typewriter in the prison library.

Fallis sent the print wheel to the U.S. Postal Inspection Service Forensic Laboratory. Analysis indicated that the print wheel was the same print wheel used to type the 1995 letters. Additionally, the Laboratory determined that the print wheel had been intentionally altered.

A former cell mate of Johns, Jim Norwood, who has since been released from prison, told Fallis that he had heard Johns discussing the letter which was sent to Blevins with their other cell mate, Mark Rogers. Norwood stated that Johns said he wrote the letter in order to implicate Garrison in a crime, and that Johns and Rogers talked about making the letter sound pompous so that it would appear to be from Garrison. Norwood said also that Johns and Rogers had etched a typewriter head that they were going to keep for themselves to use as evidence against Garrison, and Johns brought up the name Dorcie.

Fallis interviewed Mark Rogers after receiving Norwood's information. Rogers, serving a life sentence for felony murder, admitted to being involved in writing the letters, and identified the alterations to the print wheel without Fallis showing him the letters. Rogers stated that Johns had written out what he wanted typed and had Rogers type the letters on a Brothers typewriter in the prison library, paying Rogers two packs of cigarettes for the typing. Rogers also said that he had seen Johns alter the print wheel so that the letters could be easily connected to the Brothers typewriter. Rogers pled guilty to conspiring with Johns to mail threatening communications to Blevins and Judge Brown.

Garrison testified that Johns had talked to him about the letters, and had told Garrison that a print wheel had been altered, in an attempt to make it appear that Garrison had sent them. Garrison also stated that Johns said he sent the letters in order to get something from the government in exchange for testifying against Garrison. Garrison stated that he had nothing to do with the 1995 letters, and admitted that he had sent the 1993 letters and pled guilty to charges concerning them.

Another prison employee testified that the stamps on the back of the envelopes of the 1995 threatening letters demonstrated that the letters originated at STSRCF. This employee also stated that Johns and his cell mate Mark Rogers both worked in and had access to the library.

Johns testified in his own defense, denying he had any involvement with the 1995 letters. He stated that he knew Blevins' first name and would not have mistakenly addressed a letter to "Keith" Blevins. Johns said that Rogers admitted to him that Rogers had written the letters. He commented that the Brothers typewriter had been in the library office for more than five years and was rarely used because the print wheel was "screwed up." He also stated that everyone in the prison had access to the library, and thus to the typewriters.

*United States v. Johns*, slip op. at 2-5, 2000 WL 64948 at \*\*1-3.

In support of his § 2255 motion, petitioner alleges (1) prosecutorial misconduct, in that the prosecutor failed to provide the defense with favorable evidence and that he knowingly used perjured testimony, and (2) ineffective assistance of counsel.

5

III.   Discussion

   *A. Prosecutorial Misconduct – Failure to Provide Favorable Evidence*

   In *Brady v. Maryland*, 373 U.S. 83, 86 (1963), the U.S. Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Petitioner alleges four instances of a *Brady* violation. For the reasons set forth below, the court finds that none of allegations have merit.

   Petitioner first claims the government failed to provide the defense with evidence of an investigation by the Internal Affairs division of the Tennessee Department of Correction (TDOC) into the manufacture of forged money orders at STSRCF. Petitioner claims that an examination of the money orders would demonstrate that the typewriter printwheel used to write the letters was the printwheel used to produce the forged money orders. In an affidavit in support of the government's response, Russell Fallis testifies that he was not aware of such an investigation and did not have such information in his files. [Affidavit of Russell R. Fallis, United States Postal Inspector, Exhibit A to Government's Response to Petitioner's § 2255 Motion]. In addition, petitioner has failed to demonstrate how this information would have been material.

Petitioner also claims that the Tennessee Bureau of Investigation (TBI) learned, through its investigation of John Garrison's solicitation of murder, that Garrison attempted to bribe two inmates into saying that petitioner and Johnny Rollyson approached Garrison about having the victims murdered. According to petitioner, the government failed to provide this information to the defense. Mr. Farris, however, again testifies that he was not aware of this information. In any event, petitioner had ample evidence with which to impeach Garrison's testimony at trial.

Petitioner next claims that the government failed to provide the defense with the State's witness list for Garrison's solicitation for murder trial. Petitioner alleges the witness list would have shown that he was never a witness for the State at Garrison's trial. Petitioner fails to demonstrate, however, how the witness list would have been material.

Finally, petitioner claims the government failed to provide the defense with the results of the investigation of a STSRCF female employee involved in sexual encounters with staff and inmates, including the government's witness, Mark Rogers. According to petitioner, Rogers denied to investigators having sexual relations with the female employee. Petitioner claims this is contrary to Rogers' assertion at trial that when confronted with anything he did, he admitted it and suffered the punishment. Mr. Fallis testifies that he was not aware of such an investigation and, in any event, the court fails to see how the information would have been material.

## B. Prosecutorial Misconduct – Use of Perjured Testimony

The law is well-settled that to vacate a sentence on the grounds of perjured testimony, the petitioner must prove not only that he was convicted by perjured testimony but also that the false statements were material and that the prosecuting officials at the time the testimony was used knew that it was perjured. *See, e.g., United States v. Bagley*, 473 U.S. 667, 679-80 (1985); *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993).

> [I]t is the knowing use by the Government of false evidence that constitutes the denial of due process. An allegation of perjury, apart from an allegation of knowing use by the Government of that perjury, constitutes no basis for habeas corpus or coram nobis relief as it alleges no error of constitutional dimensions. The credibility of witnesses is ordinarily for trial by the jury in the criminal trial. False evidence and perjury are matters that may be raised on the trial and on motions for a new trial, but not in habeas corpus, Section 2255, or other post-conviction petitions.

*Hoffa v. United States*, 339 F. Supp. 388, 392 (E.D. Tenn. 1972), *aff'd*, 471 F.2d 391 (6th Cir. 1973). Petitioner alleges three instances of the knowing use of perjured testimony, none of which the court finds have merit..

Petitioner testified at trial that he was subpoenaed by the defense for Garrison's solicitation of murder trial. In rebuttal, the government called Garrison to the stand and Garrison testified that it was his understanding that petitioner was going to testify against him. Petitioner claims the government knew he was not a witness against Garrison and thus deliberately used perjured testimony.

8

Case 3:97-cr-00143  Document 76  Filed 06/23/05  Page 8 of 12  PageID #: 8

The purpose of Garrison's testimony as a rebuttal witness was to show the animosity that Johns felt towards Garrison. Petitioner was the one who first approached state investigator Ross Haynes about Garrison's solicitation to commit murder, although at this trial he claimed he was not serious and only joking. Nevertheless, it was reasonable for Garrison to believe petitioner would testify against him at some point. Thus, it was not perjury for Garrison to testify to that.

Petitioner also alleges that Mark Rogers' testimony that if he did something, he would admit to it, was a deliberate use of perjured testimony. The record reflects that, upon being questioned about the threatening letters, Rogers immediately admitted his role in the conspiracy. He entered into a plea agreement with the government and agreed to plead guilty. As noted earlier, Mr. Fallis testifies by affidavit that he was not aware of any investigation into sexual encounters between Rogers and a female employee. Accordingly, the government did not knowingly use perjured testimony from Rogers.

Petitioner further alleges that on direct examination, Rogers admitted he had entered into a plea agreement with the government. In response to the defense motion for a directed verdict at the close of proof, however, the government stated that Rogers had no reason to lie and had testified without any plea agreement. According to petitioner, this was an outright lie by the government. The court was aware that Rogers had pled guilty pursuant to a plea agreement. Any misstatement by the government in that regard was immaterial.

9

## C. Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), the defendant must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id*. at 691-92.

10

Petitioner alleges that, although he provided his attorney with the names of witnesses that would aid the defense, his attorney failed to interview the witnesses. Petitioner also claims his attorney took no steps to force the government to provide information after it was withheld during discovery, and that his attorney made no attempt to discover witnesses or evidence.

Petitioner does not state the names of the witnesses his attorney failed to interview, nor does he state what their testimony would have been or how their testimony would have aided the defense. Petitioner likewise does not state what witnesses or evidence his attorney should have discovered. A § 2255 movant has the burden of proving the substance of his allegations and a district court is not required to hold an evidentiary hearing on the basis of conclusory allegations. *See, e.g., Tucker v. United States*, 423 F.2d 655, 656 (6th Cir. 1970); *United States v. Orlando*, 327 F.2d 185, 188 (6th Cir. 1964); *Malone v. United States*, 299 F.2d 254, 255 (6th Cir. 1962).

With respect to counsel's having failed to force the government to provide information, petitioner is presumably referring to the alleged *Brady* material. Petitioner's attorney, however, could not force the government to disclose information that was not its possession. Under the circumstances of this case, the court finds that petitioner has failed to meet either prong of the *Strickland* test. Defense counsel did not render ineffective assistance of counsel.

11

Case 3:97-cr-00143  Document 76  Filed 06/23/05  Page 11 of 12  PageID #: 11

IV.  Conclusion

The petitioner is not entitled to relief and his motion to vacate, set aside or correct sentence will be **DENIED**.  This action will be **DISMISSED**.  In addition to the above, this court has carefully reviewed this case pursuant to 28 U.S.C. § 1915(a) and hereby **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, this court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal.  *See* Rule 24 of the FEDERAL RULES OF APPELLATE PROCEDURE.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253.

**AN APPROPRIATE ORDER WILL ENTER.**

                                                s/ Leon Jordan
                                      United States District Judge

12

Case 3:97-cr-00143   Document 76   Filed 06/23/05   Page 12 of 12   PageID #: 12